UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                              Chapter 11

Nordica Soho LLC,                                          Case No. 16-11856 (SCC)

                              Debtor.
-----------------------------------------------------------x

## DISCLOSURE STATEMENT PURSUANT TO
## SECTION 1125 OF THE BANKRUPTCY CODE

THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR BANKRUPTCY COURT APPROVAL, BUT HAS NOT YET BEEN ACTUALLY APPROVED.

Nordica Soho LLC (the "Debtor") hereby submits this Disclosure Statement (the "Disclosure Statement"), pursuant to §1125 of Title 11, United States Code (the "Bankruptcy Code"), in connection with the Debtor's accompanying Chapter 11 Plan of Reorganization dated September 26, 2016 (ECF #20) (the "Plan").

### I.    OVERVIEW

**A. Summary of the Plan.**  The Plan is mainly predicated on a sale (the "Sale") of the Debtor's property located at 182-186 Spring Street, (the "Property"), consisting of two adjoining parcels.  The Property was acquired in 2011 for the purpose of pursuing a residential re-development project which has stalled, necessitating the Chapter 11 filing.

The specific time, terms and conditions of the Sale shall be established at a future date by the Bankruptcy Court pursuant to a Bidding Procedures Order (defined below) to be entered on notice to all creditors, hopefully after a suitable "stalking horse buyer" is designated by the Debtor.  The Property is being marketed for sale by Holliday Fenoglio Fowler, LLP ("HFF"), which was retained by the Debtor pursuant to Order dated September 7, 2016.

HFF is also assisting the Debtor in seeking potential new investors to provide equity or debt capital toward refinancing or recapitalizing the development project and payment of secured debt (a "Refinancing").  While a Refinancing scenario is not currently anticipated, the Debtor does not want to foreclose the possibility entirely.  In the event a viable Refinancing scenario materializes, the Debtor reserves the right to supplement the Plan.  However, the Plan is primarily structured around a Sale of the Property.

The Property is encumbered by two mortgages.  The first mortgage lien is held by 182-186 Spring Street Lender LLC, an affiliate of Acadia Realty Trust, asserted to be in the amount of $14,579,714.55 as of June 15, 2016.  The second mortgage was the subject of pre-bankruptcy litigation in the Supreme Court of the State of New York, New York County, and has been reduced to judgment in the amount of $12,347,633.05 as of August 7, 2015.

The Debtor also owes pre-petition real estate taxes and ECB violations totaling approximately $251,000.  Unsecured claims consist largely of debts incurred in the development of the Property in the aggregate amount of approximately $432,000.

The Plan is designed to provide a mechanism for selling the Property at fair market value and then distributing the net proceeds of sale to the holders of allowed claims based upon the priority scheme established under the Bankruptcy Code.

All surplus proceeds after payment of allowed claims shall be retained by the Debtor for distribution to the equity interest holders of the Debtor.

To maximize the Debtor's ability to qualify for a transfer tax exemption, final approval of the Sale shall be sought prior to the confirmation hearing on the Plan, with a closing on the Sale to occur after the confirmation hearing as required by 11 U.S.C. § 1146(a).

**B. Confirmation of the Plan.**

The Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan, on _____, 201__ at __:__ _.m., Eastern Standard Time, before the Honorable Shelley C. Chapmanin the United States Bankruptcy Court, One Bowling Green, Courtroom 623, New York, NY 10004. At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Debtor believes that the Plan will satisfy all applicable requirements of Section 1129(a) of the Bankruptcy Code. Confirmation makes the Plan binding upon the Debtor and all creditors and equity holders.

Any party in interest may object to confirmation of the Plan. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan, be served upon: counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, Attn: Kevin J. Nash, 1501 Broadway, 22nd Floor, New York, New York 10036, on or before _____, 201__, in the manner described in the order scheduling hearing on confirmation accompanying this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in open court.

In order for the Plan to be accepted on a consensual basis, each class must accept the Plan or be deemed to accept the Plan. Acceptance is based upon affirmative votes from each class of creditors holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims of those creditors in the particular class who actually vote.

In accordance with section 1126(f) of the Bankruptcy Code, all classes of claims that are impaired may vote to accept or reject the Plan. A class of claims is impaired if the Plan modifies,

alters or changes the Claimant's legal, equitable or contractual rights against the Debtor. In this case, the Class 3 Judgment Claim of 182 Spring Street Associates and the Class 4 Claims of General Unsecured Creditors are potentially impaired and eligible to vote on the Plan.

Ballots for acceptance or rejection of the Plan will accompany the Plan, and should be completed by all voting classes of creditors. After carefully considering this Disclosure Statement and the Plan, please indicate your vote on the enclosed ballot and return same before the voting deadline to Goldberg Weprin Finkel Goldstein LLP, Attn Kevin J. Nash, 1501 Broadway, 22nd Floor, New York, New York 10036. Facsimile: (212) 422-6836. E-mail: KNash@GWFGlaw.com.

In order to be counted, your ballot must be actually received on or before _____, 201_ at 5:00 p.m. Eastern Standard Time (the "Voting Deadline"). All forms of personal delivery of ballots including overnight delivery service, courier service, and delivery by hand are acceptable. Facsimile and electronic transmissions are acceptable as well. There is no need to file your Ballot with the Clerk of the Bankruptcy Court. If your ballot is damaged or lost, or if you do not receive a ballot to which you are entitled, you may request in writing a replacement by contacting Goldberg Weprin Finkel Goldstein LLP, Attn Kevin J. Nash, at the stated address.

Only actual votes will be counted. A failure to return a ballot will not be counted either as a vote for or against the Plan. If a creditor casts more than one ballot voting the same Claim before the Voting Deadline, the latest dated Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior ballots.

**D.    Disclaimer.** The Bankruptcy Court's approval of this Disclosure Statement does not constitute an endorsement of the Plan. No representations other than those explicitly set forth

in this Disclosure Statement are authorized concerning the terms of the Plan or the Debtor's development plans, the scope of assets or the extent of the Debtor's liabilities.

This Disclosure Statement contains summaries of certain provisions of the Plan, certain statutory provisions, certain documents related to the Plan, certain events in the case and certain financial information.  Although the Debtor believes that the Disclosure Statement is accurate, the terms of the Plan govern, and creditors are advised to review the Plan in its entirety.

## II.     EVENTS LEADING UP TO THE BANKRUPTCY FILING

The Property was acquired in 2011 for the purpose of pursuing a residential re-development project (the "Project").  In 2013, new equity holders became involved with the Debtor's Project and caused the then-existing mortgage debt to be refinanced with affiliates of Acadia Realty Trust (182-186 Spring Street Lender LLC), which currently holds the first mortgage against the Property asserted to be in the amount of $14,579,714.55 as of June 15, 2016.  Additionally, the prior owner of the Property retained a purchase money second mortgage arising out of the sale to the Debtor.  The Project subsequently stalled, leading to ensuing defaults with the Debtor's respective mortgage holders.  A series of settlement / forbearance agreements were negotiated under which certain of the Debtor's principals continued to pay debt service and carrying costs for the Property.

Ultimately, efforts to negotiate acceptable terms for further extensions were unsuccessful. Accordingly, the first mortgage holder commenced an action for the entry of a foreclosure judgment in the State Court.  In the meantime, the second mortgage was further secured by a confession of judgment, which was entered in August 2015 in the sum of $12,347.05.  The second lienholder also pursued a Sheriff's execution sale of the Property based on its judgment.

Notably, however, notwithstanding the stalled development, the Property still retains significant equity in today's market. Thus, the Chapter 11 was filed On June 3, 2016 to obtain fair market value for the Property and avoid a distressed foreclosure or Sheriff's sale.

Since the filing date, the Debtor has retained HFF and is actively marketing the Property which the Debtor believes will result in a Sale for sufficient funds to pay real estate taxes and the claims of the two secured creditors in full.

### III.    THE PLAN

**UNCLASSIFIED CLAIMS**

All Administrative Expense Claims (other than Professional Fee Claims) shall be paid in the regular course of business under the terms of applicable contracts and agreements which currently exist between the Debtor and its respective creditors.

The holders of professional fee claims for services rendered on behalf of the bankruptcy estate shall (a) file, on or before the date that is sixty (60) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full by the Debtor, in cash form the Confirmation Fund, in such amounts as are Allowed by the Bankruptcy Court.

**CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**Summary**

The categories listed below classify Claims against the Debtor for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

6

**Summary of Classification and Treatment of Claims and Equity Interests**

| Class | Designation | Impaired |
|---|---|---|
| Class 1 | Real Estate Tax and ECB Claims of New York City | No |
| Class 2 | Secured first mortgage claim of 182-186 Spring Street Lender LLC | No |
| Class 3 | Judgment claim of 182 Spring Street Associates | To be determined |
| Class 4 | Unsecured Claims | Yes |
| Class 5 | Equity Interests | Yes |

**Classification, Treatment and Voting**

**Class 1 —Real Estate Tax Claims**

Classification: Class 1 is comprised of the Real Estate Tax and ECB Claims of New York City.

Treatment: The Department of Finance, or such other agency designated by the City of New York, shall receive a cash distribution on the Closing Date from the proceeds of the Sale equal to the allowed amount of all outstanding real estate tax liens, claims, and related charges, including any ECB claims.

Voting: Class 1 is unimpaired. The City of New York is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**Class 2 — Secured First Mortgage Claim of 182-186 Spring Street Lender LLC.**

Classification: Class 2 is comprised of the Secured First Mortgage Claim of Spring Street Lender LLC.

Treatment: In papers filed in a pre-bankruptcy state court foreclosure action, the Class 2 claimant has asserted that it is owed the sum of $14,579,714.55 as of June 15, 2016. The Debtor reserves the right to object to portions of the claim. For purposes of the Plan, the Class 2

Claimant shall receive a cash payment on the Closing Date in an amount equal to the allowed amount of the secured claim as finally determined by the Bankruptcy Court.

In the event the amount of the Class 2 Claim has not been fixed prior to the Closing Date, the Debtor shall establish a reserve for all amounts then in dispute from the net proceeds of the Sale. This reserve shall be held by the Disbursing Agent in the Confirmation Account pending the final determination of the Debtor's objection.

Voting: Class 2 is unimpaired. The Secured Claim of the Class 2 Claimant is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code since the claims will be paid in full after the claim objection process has been completed.

**Class 3 — Judgment Claim of 182 Spring Street Associates**

Classification: Class 3 is comprised of the Judgment Claim of 182 Spring Street Associates.

Treatment: The Class 3 Claimant obtained a judgment from the Supreme Court, New York County, on August 7, 2015 in the amount of $12,347,633.05. Interest accrued thereafter to the Petition Date at the New York statutory judgment interest rate of 9% per annum. However, the Class 3 Claimant has filed a proof of claim asserting entitlement to interest at the default rate of 16% under the mortgage through the Petition Date. The filed claim also asserts a claim for legal fees in the amount of $157,212.63 without any supporting documentation or court order allowing the fees. Accordingly, the Debtor reserves the right to object to portions of the claim.

For purposes of the Plan, the Class 3 Claimant shall receive a cash payment on the Closing Date from the residual net sale proceeds after payment of Administrative Expenses and Class 1

and 2 Claims, but in no event more than the allowed claim as finally determined by the Bankruptcy Court after adjudication of the Debtor's objections.

In the event the amount of the Class 3 Claim has not been fixed prior to the Closing Date, the Debtor shall establish a reserve for all amounts then in dispute from the net proceeds of the Sale. This reserve shall be held by the Disbursing Agent in the Confirmation Account pending the final determination of the Debtor's objection.

Voting: Class 3 is potentially impaired. The final status to be determined after the Sale price has been fixed.

**Class 4 — Unsecured General Claims**

Classification: Class 4 is comprised of allowed Unsecured General Claims, consisting primarily of obligations incurred to date in connection with the development of the Property.

Treatment: To the extent that the net proceeds of the Sale remaining after payment of Administrative Expenses and Class 1, 2 and 3 Claims are sufficient to pay unsecured debt, each holder of an Allowed Unsecured General Claim shall receive a cash dividend on the Closing Date up to the amount of its allowed Unsecured Claim, or a *pro rata* portion thereof.

Voting: Class 4 is impaired. The General Unsecured Claims are entitled to vote on the Plan, because although the Debtor believes that the Property has sufficient equity to pay Class 4 claims, the Debtor cannot guaranty payment in full.

**Class 5 — Equity Interests**

Classification: Class 5 is composed of the Equity Interests.

9

Treatment: Class 5 Equity Interest Holders shall receive the surplus proceeds and recoveries from Causes of Action, if any, after payment in full of Administrative Expenses, and allowed Class 1, 2, 3 and 4 Claims.

Voting: As insiders, the votes of the Equity Interest Holders are not counted in considering confirmation of the Plan.

## IV. IMPLEMENTATION OF THE PLAN

**Implementation**. The Plan shall be implemented through the Sale of the Property and the establishment of the Confirmation Fund and related reserves. Cash payments to be made pursuant to this Plan will be made by the Disbursing Agent on the Closing Date, or at such later date as ordered by the Bankruptcy Court.

In an effort to attract the most interest in the location, the Debtor is considering consolidating a sale of the Property with a joint sale of the adjacent property at 188-190 Spring Street (Block 489, Lots 21 and 22) (the "188 Property") consisting of a building with three residential units and one commercial unit on the first floor, together with a small lot. The neighboring 188 Property is owned by 188 Spring Holdings LLC, which in turn is owned by Abraham Jacobi. Mr. Jacobi is not a principal of the Debtor, but is a partner with one of the Debtor's principals in other building projects. No final determination has been made as to whether the 188 Property will be included in a sale, but the possibility exists and is being seriously explored.

After a proposed sale contract is ready to be presented to the Bankruptcy Court, a determination will be made as to the 188 Property as well.

The Confirmation Order shall constitute an order of the Bankruptcy Court authorizing the Debtor for title purposes, on the occurrence of the Effective Date, to sell the Property to the Successful Purchaser for the approved purchase price, with all proceeds of the Sale and recoveries from Causes of Action to be paid to creditors in order of priority in accordance with the Plan and, after all creditors are paid under the Plan, to distribute the surplus to the Equity Interest Holders for distribution to their members in accordance with their own operating agreements.

The Confirmation Order shall authorize the Debtor to:

(a) convey title to the Property pursuant to sections 363(b) and (f), 1123(a)(5)(D) and 1141(a) and (c) of the Bankruptcy Code, free and clear of all liens, Claims, Encumbrances or Interests (other than permitted Encumbrances, if any, specified in the APA), to the Successful Purchaser pursuant to this Plan and the APA; and

(b) pay all allowed amounts required to creditors and then to the Equity Interest Holders, in accordance with the terms of this Plan.

**Discharge of Obligations.**  Except as otherwise expressly provided for and preserved herein, upon the occurrence of the Closing Date, as the case may be, any mortgages, judgments, liens, notes, bonds, agreements, instruments or documents, or otherwise, evidencing or creating any indebtedness, guaranties or other obligations of the Debtor that relate to Claims under this Plan and relating to the Property, shall be deemed satisfied and cancelled, and the obligations of the Debtor under each of the foregoing shall be discharged; <u>provided, however,</u> that, to the extent applicable, the mortgage held by 182-186 Spring Street Lender LLC shall not be cancelled and the judgment held by 182 Spring Street Associates shall not be deemed satisfied, and they shall instead be treated as set forth in the APA.

**Post-Closing Date Transactions.** On or after the Closing Date, the Disbursing Agent, on behalf of the Debtor, is hereby authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the transfer of the Property, including the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree.

**Transfer of Assets.** On the Closing Date, title to the Property shall be transferred to the Successful Purchaser pursuant to and in furtherance of this Plan by means of the following:

(a)  a Bargain and Sale Deed to the Property in form and substance reasonably acceptable to the Successful Purchaser to be recorded in the appropriate register's office (the õDeedö), together with any and all New York City closing documents, including all New York State real property transfer tax returns and any and all affidavits, certificates and other documents which are usual and customary to facilitate a sale of real property in the City of New York; and

(b)  a Bill of Sale, in form and substance reasonably acceptable to the Successful Purchaser, transferring all personal property of the Debtor used in or useful to the operation and maintenance of the Property.

**Transfer Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code, under this Plan, the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with, this Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by

or in any way related to this Plan or the Sale shall not be subject to any document recording tax, mortgage recording tax, stamp tax or similar government assessment, and the appropriate state or local government official or agent shall forego the collection of any such tax or government assessment and accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment, including without limitation the New York City Real Property Transfer Tax and New York State Documentary Tax.

**Preservation of Other Rights and Causes of Action**. All Causes of Action belonging to the Debtor against third parties shall remain property of the Debtor's estate and shall be vested in the Reorganized Debtor (i.e., Debtor following Confirmation of the Plan) for prosecution as Reorganized Debtor deems necessary and appropriate. Although the Debtor is currently unaware of any Causes of Action, to the extent any Causes of Action are subsequently identified and pursued, the proceeds, if any, will be deposited into the Confirmation Fund for distribution to creditors under this Plan.

**Post-Confirmation Management**. The Reorganized Debtor shall continue to be managed by the current co-Managers, Nanci Hom and Harry Shapiro.

**Rights and Powers of the Debtor**. The Debtor shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) direct that all distributions contemplated hereby be made, (iii) prosecute, settle and enforce all causes of action and claims on behalf of the estate, and (iv) exercise such other powers as may be deemed by the Debtor to be necessary and proper to implement the provisions hereof.

**Rejection of all Existing Leases and Executory Contracts**. The Debtor is unaware of any unexpired leases or executory contracts to which it is party. To the extent any unexpired leases or executory contracts to which the Debtor is party are extant as of the Confirmation Date, they shall be deemed rejected as of the Confirmation Date.

**Conditions Precedent to the Effective Date.** The following are conditions precedent to the Effective Date that must be satisfied:

(a) The Sale Order shall have been entered by the Bankruptcy Court approving the APA in all material respects, and the Debtor shall have designated a Successful Purchaser for the Property;

(b) Confirmation shall have occurred and the Confirmation Order shall have been entered by the Bankruptcy Court;

(c) The Confirmation Order shall have become a Final Order, unless the Bankruptcy Court waives the period set forth in Bankruptcy Rule 6004(h);

(d) The Closing Date shall have occurred, the purchase price received by the Debtor, and title to the Property shall have been conveyed to the Successful Purchaser in accordance with this Plan and the Confirmation Order;

(e) There shall not be in effect on the Effective Date any Order entered by a court of competent jurisdiction staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan; and

(f) All other actions and documents necessary to implement the Plan shall have been effected or executed in form and substance satisfactory to the Debtor.

**Retention of Jurisdiction**. Notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction until the case is closed to perform the following: (a) Ensure that the Plan is fully consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code; (b) Resolve all matters arising under or relating to the Plan, including, without limitation, the enforcement, interpretation and any issues or dispute relating to the post-confirmation closing on the Sale of the Property; (c) Allow, disallow, determine, liquidate or classify, any secured or unsecured Claims, including, without limitation, the resolution of any request for payment of any Administrative Expenses, the resolution of any and all objections to the allowance any Claims, and the resolution of any adversary proceeding; (d) Grant or deny any and all applications for allowance of compensation and reimbursement of expenses by the professionals retained during the bankruptcy case; (e) Resolve any motions or applications pending on the Effective Date; (f) Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the Plan; (g) Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, deeds, instruments and other agreements or documents created in connection with the Plan or to enforce all orders, judgments, injunctions, and rulings entered in connection with the bankruptcy case; (h) Issue any orders or take such other actions as may be necessary or appropriate to restrain interference by any person or entity with consummation or enforcement of the Plan; and (i) Enter a Final Decree concluding the bankruptcy case.

## V.    BASIC REQUIREMENTS FOR CONFIRMATION OF THE PLAN

Section 1129(a) of the Bankruptcy Code lists a number of findings that need to be made prior to Confirmation.  In this case, because the Debtor is selling the Property and distributing all of the net proceeds to the holders of allowed claims in accordance with the priority scheme established under the Bankruptcy Code, the Debtor believes that the Plan meets with all of the requirements of Section 1129(a).  In the end, the Debtor anticipates that all creditors will support the Plan as the best way to maximize the value of the Property, even if various claims come under objection.  Accordingly, the Debtor is confident that creditors will support the Plan.

In addition to acceptance of the Plan by creditors, there are two additional requirements that are worth highlighting for purposes of the Disclosure Statement:

A.    **Feasibility Of The Plan.**  As a prerequisite to confirmation, Bankruptcy Code § 1129(a)(11) requires that the Debtor and its equity interest holders demonstrate their ability to fund the Plan and establish that confirmation is not likely to be followed by the need for further financial reorganization or restructuring.  Since the Debtor is liquidating its assets at fair market value, this test is easily met.

B.    **Best Interests Of Creditors Test.**  The Plan must also be in the õbest interests of creditorsö.  This is a legal term of art which requires that the Plan provides a dividend to the class of creditors that vote against the Plan, which is equal to or greater than the distribution those creditors would realistically receive if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code.  In fact, the cost of liquidation under Chapter 7 includes an additional layer of administrative expenses for the Trustee and his professionals, and the Trustee would lose the benefit of the Section 1146(a) tax exemption that is not available in a Chapter 7 case.

Accordingly, there is little doubt that the net sale proceeds available for distribution to creditors under the Plan will be greater than the sums remaining for creditors in a Chapter 7 liquidation.

## VI. CONCLUSION

The Debtor believes the Plan should be confirmed, and urges creditors to vote in favor of the Plan.

Dated: New York, New York
September 26, 2016

| | |
|---|---|
| NORDICA SOHO LLC | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP<br>Attorneys for the Debtor<br>1501 Broadway, 21st Floor<br>New York, NY 10036 |
| By: /s/ Nanci Hom, Co-Manager | By: /s/ Kevin J. Nash, Esq. |
| /s/ Harry Shapiro, Co-Manager | |

X:\GWFG\New Data\Yen\Word\182 Spring Street  (Nordica Soho)(GWFG Collision 0)\Disclosure Statement 09-26-16 v1.Doc